KYLE K. BRUTON, BY NEXT FRIEND, RESPONDENT, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, APPELLANT.[*]

Kansas City Court of Appeals. April 29, 1929.

[*]Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 3013, p. 1031, n. 31; Railroads, 33Cyc, p. 1049, n. 48; Trial, 38Cyc, p. 1511, n. 23.

*Luther Burns, Henry S. Conrad, L. E. Durham, Hale Houts* and *Ilus M. Lee* for appellant.

*Pross T. Cross, L. B. Gillihan* and *Gerald Cross* for respondent.

LEE, C.—This is an appeal from a judgment in favor of plaintiff on account of the death of his mother, Essie Bruton Rude, who was killed in a collision with defendant's locomotive while attempting to

cross the railway's tracks in an automobile. The accident occurred in Liberty, Clay county, Missouri, on May 2, 1925. The action was brought against the railway company, the engineer, A. H. Jolley, and the fireman, but was later dismissed as to the fireman. It was tried in Daviess county, resulting in a judgment for plaintiff against both defendants for $6000, from which the railway company appeals.

The evidence shows that Lincoln street is an unpaved, lesser-used street in the city of Liberty, running at right angles to the more heavily traveled Mill street; that Jewell street is the next street east of and parallel with Lincoln street; that the railway right-of-way crosses Mill Creek east of Jewell street, and then turns westward till it crosses Jewell street, and then curves down-grade in an elongated reverse "S" to Lincoln street, at which point it continues its curve somewhat to the left toward the next parallel street known as Leonard street. Due to this curve the north rail of the track is slightly higher than the south rail at the Lincoln street crossing. Lincoln street approaches the railway tracks from the north on somewhat of an up-grade, with the effect that this north rail is apparently the peak of the grade. The crossing is of plank. On the left, or east side of this approach from the north, are first a dwelling-house and then two smaller buildings or sheds, the latter two being contiguous to each other, and extending to the right-of-way line. The distance from the south edge of these sheds on the right-of-way line to the nearest rail is twenty feet, nine inches, which constitutes the opening of the field of vision toward the tracks from the east.

Mrs. Corum, the only eyewitness to the actual contact, other than the engineer, from the window of her house, about sixty feet south of the crossing, testified that she saw the Ford automobile containing plaintiff's mother, his step-father and their infant child, approaching the crossing from the north; that just before they cleared the shed the car increased its speed a little "just like anybody would up a hill and they would pull down the gas a little."

She also stated that the man and woman were looking west, the opposite direction from the train, as they approached, until they passed the shed. At that time they looked toward the train, coming from the east, and the woman "just lay back in the car and she never made a move. . . . I think they seen the train after they got by that shed, but I don't think they seen the train before. . . . Yes, sir, before they got up on the track, but he was going up, climbing the grade, and he couldn't stop. . . . I think they must have seen it. She must have been dead before ever she got up on the track, because she must have just fainted away from the way she looked. She just looked like she had fainted away before the automobile ever got on the track, she looked like she had just fainted away, and the man was still doing all he could to keep the thing from going up on

the track. . . . It seemed like he was trying to stop the car before it got up on the track. . . . Yes, sir; she looked like before she ever got up on the track, she looked like she had fainted. But they was looking, they seemed to be looking up towards the other ways, they seemed to be in good spirits before they ever got up to go up on the track.''

As to the actual collision she testified:

''The man was doing the driving, and he drove up on the track, and in place of going on over, his car came back, and when the car came back he was trying to get it off, and just like that, in a moment, the train hit him, and off it went. . . . It came back just like that; came right back and the two front wheels hung on the back rail and on the north side of the track. . . . He just took hold of the steering wheel just like this, to get it off the track, and he seen it wouldn't go off, and he reached and caught his little baby, raised up just like this, fell back on the seat, and the train hit the car. . . . That automobile was there about ten seconds. . . . It might have been a shorter time and it might have been that time, but it looked to me like it was just a flash of lightning.''

Plaintiff's mother was apparently killed instantly, her baby lived only a few minutes, and the husband but a few hours. Plaintiff, about fourteen years old at the time of the trial, is his mother's only surviving child.

The petition alleged negligence of defendant in operating the train at a dangerous speed, and in excess of ten miles per hour (alleged to be unlawful under a city ordinance and under the common law), and without giving crossing signals or other warnings, and without keeping a sufficient lookout. The answer was a general denial and a plea of contributory negligence. At the trial no claim was made on the ground of any original negligence in the operation of the train (except violation of speed ordinance) or of failure to warn, or upon any negligence alleged as of the fireman, or of the engineer in his response to the fireman's call to whistle, but only on the humanitarian theory that the engineer himself saw or should have seen the peril in time to avoid the accident and negligently failed to do so, and the case was submitted to the jury on that theory only.

Some of plaintiff's witnesses testified that the train was going as high as fifty miles an hour. Defendant's witnesses testified that it was going from twenty to twenty-five miles per hour, and that it actually stopped as soon as was possible at that speed, which in fact, brought the rear of the train from ninety to two hundred feet west of the crossing when it stopped. The speed declared by the ordinance to be a misdemeanor was a speed greater than ten miles per hour. The engineer testified the engine was of the largest type owned by the

company; that when he was at Jewell street he could see the crossing, which at that time was clear, but that then the curves in the track caused the front of his engine to hide the crossing, and when he first saw the automobile on the crossing the front of his engine was only fifteen or thirty feet away.

The fireman testified that from the other side of the cab he saw the automobile when the engine was near the whistling post, which was about two hundred feet from the crossing, and that he then called to the engineer to whistle. The engineer testified that when the fireman called out "whistle" he applied what he called the service brake (by which he slowed up the train gradually), and that when he actually saw the automobile he applied the emergency brake, which meant the brake in full force, and did all in his power to stop the train.

On the theory on which the case was submitted, the negligence of defendants, if any, consisted only in the speed of the train, and its effect on their ability to stop, and not in any act or failure to act on the part of the engineer in any other respect. The engineer's testimony was of twenty to twenty-five miles per hour. The testimony as to the higher speed was that of Mrs. Corum, who saw the accident from her house, of witness Thompson, passing in his automobile, and of Mrs. Smith, another neighbor, who gave the higher figure as their offhand estimate.

However, plaintiff did not base his case on testimony as to the actual speed of the train, but upon the ordinance speed of ten miles per hour. Appellant assigns as error the giving of plaintiff's Instruction 2, which included that issue.

This instruction recited generally defendant's duty to operate its trains with ordinary and reasonable care to discover perils and avoid injury, and that failure in this duty was negligence as a matter of law. It then stated that if the jury found that deceased was in the described peril:

"and that defendant, Chicago, Rock Island & Pacific Railway Company, through its engineer thereon, the defendant A. H. Jolley, then and there saw, or by the exercise of ordinary care could could have seen, the said Essie Bruton Rude and said automobile so on or near said track and in or going into a position of imminent peril in or near said track and in danger of being struck by said train thereon, in time to have, by the exercise of ordinary care on their part, and with reasonable safety to the equipment of and the persons thereon, either stopped said train or checked the speed thereof, and thereby have prevented the killing of the said Essie Bruton Rude, but that they negligently failed to do so, and that the negligent failure (if any) on their part to so stop the train or to check the speed thereof was a direct and proximate cause of the injury and death of said

Essie Bruton Rude, and if you further find'' (as to plaintiff being her heir) ''you will find your verdict for plaintiff accordingly.''

The instruction then recites that contributory negligence would be no defense in such case; and then adds:

''In passing upon the issue as to whether or not defendant Jolley, the engineer, did or could have, by the exercise of ordinary care, discovered the peril (if any) of said Essie Bruton Rude upon or near said track, in time to have (in the exercise of ordinary care), either stopped said train or checked the speed thereof and thereby have prevented her death, you will in passing upon the distance in which said train could have been stopped, or the speed checked, treat the speed thereof as being not more than ten miles per hour, the maximum rate fixed by the ordinance in evidence, and this you will do, even though you should find from the evidence that said train was in fact running at a rate of speed greatly in excess of ten miles per hour.''

There is no claim that the engineers could have stopped in time to prevent the accident if traveling at a speed of either the minimum of twenty miles or the maximum of fifty miles, which the witnesses estimated, and the question was not submitted. Plaintiff rests his case on the contention that it would have been possible to have avoided the accident if the speed had not exceeded ten miles per hour, permitted by the ordinance; and plaintiff's Instruction 2, above quoted, is based on that contention. The effect of the instruction is to declare that if, after discovery of the peril, the engineer could have stopped his train within the time which would˙ have been possible while traveling at the ordinance speed of ten miles per hour, although because of his prior negligence he could not do so at the actual speed at which he was traveling, then decedent's contributory negligence would be no defense. This is not the law. [State ex rel. Fleming et al. v. Bland et al. (Mo. Sup.), — S. W. —, decided March 29, 1929; Disano v. Hall (Mo. App.), 14 S. W. (2d) 483.] For this reason the giving of Instruction 2 was error.

Defendants also assign as error the giving of plaintiff's Instruction No. 5, reading as follows:

''The court instructs the jury that if you should find a verdict for plaintiff and against all the defendants, then under the law, plaintiff would be entitled to only one satisfaction of said judgment; that is to say, if you should find for plaintiff and against all the defendants, and plaintiff should collect the amount of the judgment from one defendant, then plaintiff could not collect anything from the other defendants.''

The question of satisfaction is not one properly for the consideration of the jury. Plaintiff argues that the instruction was offered in order to explain to the jury that a verdict of a given amount against

both defendants would not mean that each one would have to pay the full amount, nor, on the other hand, that plaintiff could only collect half of the total from each one; and that the instruction was necessary, in order to prevent this confusion on the jury's part. The argument is not convincing; and the giving of any instruction on the subject is not commended; but if given at all, it should have gone further and explained that if the judgment was satisfied by one defendant contribution could then be had for one-half thereof from the other defendant. The instruction, as given, was prejudicial error.

Defendants also assign as error that the verdict was excessive. The evidence shows that the plaintiff, a boy of fourteen, was living with and supported by his grandfather in Mississippi. He is suing on account of the death of his mother, who apparently contributed nothing to his support, and did not even give him her personal care. Her husband, who was killed with her, was plaintiff's stepfather. As the cause is to be reversed on other grounds it is not necessary for us to consider this assignment.

For the reasons stated, the judgment should be reversed and the cause remanded. *Barnett, C.,* concurs.

PER CURIAM:—The foregoing opinion by LEE, C., is approved and adopted as the opinion of the court. The judgment is accordingly reversed and the cause remanded. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.